IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCISCO LINDOLF CRUZ ROMERO | : | |
| | : | |
| Petitioner, | : | 3:26-cv-2599 |
| | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| CRAIG LOWE, WARDEN OF THE PIKE | : | |
| COUNTY CORRECTIONAL FACILITY | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM OPINION**

Before the Court is a motion to enforce filed by *pro se* petitioner Francisco Lindolf Cruz Romero ("Petitioner"). (Doc. 11). For the reasons that follow, the motion will be granted, and Respondent Warden Lowe will be ordered to immediately release Petitioner from custody. Because the Government has now twice violated Petitioner's constitutional rights, should it elect to re-arrest and re-detain him pursuant to § 1226(a), it must first demonstrate to a fair and impartial IJ by clear and convincing evidence that continued detention under § 1226(a) is necessary because Petitioner presents a danger to the community or poses a flight risk if released.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Petitioner is a citizen of Nicaragua residing in the United States since 2022. (Doc. 8 at 1). Petitioner alleges that his bond hearing before the IJ was fundamentally unfair and violated his procedural due process rights guaranteed by the Fifth Amendment's Due

Process Clause. (Doc. 11, ¶ 8). He seeks his immediate release from custody, or, alternatively, a second bond hearing before IJ. (*Id.* at 2-3). Respondent opposes the petition, arguing that the Petitioner failed to exhaust his administrative remedies and that Court lacks jurisdiction under 8 U.S.C. § 1226(e). (Doc. 14 at 4-8). Alternatively, Respondent argue that Petitioner's bond hearing was fundamentally fair and complied with the procedural protections that the Fifth Amendment's Due Process Clause requires. (*Id.* at 8-14),

**A. <u>Procedural History.</u>**

Petitioner first claimed he was being unlawfully detained without a bond hearing by Respondent under the mandatory detention provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A), instead of the discretionary detention provision, § 1226(a). (Doc. 1). On September 23, 2026, this Court agreed and granted Petitioner's habeas petition in part, finding that Respondent was unlawfully detaining him under § 1225(b)(2)(A), and ordered that Respondent "**SHALL PROVIDE** Petitioner Francisco Lindolf Cruz Romero with an individualized bond hearing before an Immigration Judge **within ten (10) days of date of this Order**."[1] (Doc. 8, ¶ 2). The Court also permanently enjoined Respondent from detaining Petitioner under § 1225(b), absent a compelling change in circumstances. (*Id.*, ¶ 4).

[1] The Court noted that "Petitioner was recently arrested for three counts of making terroristic threats, trespassing, evading arrest, two counts of harassment, public drunkenness, and consumption of alcohol on streets/sidewalks." (Doc. 8 at 2 n.1). It further found that it "appears that those charges remain pending and Petitioner did not file a timely traverse contesting Respondent's description of his criminal history." (*Id.*).

On October 21, 2026, Petitioner filed a motion to enforce, claiming that his custody redetermination hearing before the Immigration Judge ("IJ") was fundamentally unfair and did not comply with the Fifth Amendment's Due Process Clause. (Doc. 11). The Court ordered Respondent to submit a response to the motion "**[n]o later than Tuesday October 27, 2026, at 5:00 P.M.**" (Doc. 12, ¶ 1). Respondent did not comply with the Court's order and did not seek an extension of time to file a response.

On November 2, 2026, the Court issued a show cause Order directing Respondent to "**SHOW CAUSE** why it failed to comply with the Court's October 21, 2026, Order" by November 3, 2026, at 5:00 P.M. (Doc. 13, ¶ 1). Respondent timely complied with the Order, asserting that an "administrative error" caused Respondent to miss the deadline. (Doc. 14 at 2).

**B. Petitioner's Bond Hearing.**

Petitioner remained mandatorily detained without bond from July 3 until September 23, 2026, until this Court granted his petition in part and ordered an individualized custody redetermination before an IJ. On September 30, 2026, IJ Yeshaya Poyurs denied bond "on the account that it considers that releasing you would pose a risk to the community, and that you are also a flight risk." (Doc. 14-3 at 7). Petitioner was not represented by counsel and proceeded *pro se* at the custody redetermination.

After the IJ orally denied bond, however, he then proceeded to allow Petitioner to withdraw his bond application so he could obtain counsel. (*Id.* at 8-10). The transcript of

the bond hearing, which Respondent represents was "generated through a combination of speech-to-text technology utilizing tools offered through a Government subscription with Evidence.com and human edits," (*id.* at 2 n.1) is set forth below:

> The Court: Okay, we are on the record in the mater of Mr. Francisco Lindolf Cruz Romero A number xxx-xxx-xxx. . . . Today is Wednesday September 30, 2026. The respondent is appearing by, uh, WebEx from the Pike County Detention Center and is pro se. DHS counsel is also appearing, uh, via WebEx. And that is, uh, counsel Chris Pendelton. Sir, may I have your appearance for the record, please?
>
> DHS Counsel: Chris Pendelton, on behalf of the Department.
>
> The Court: Thank you sir. Okay. Let's take at look at this case here. This is, it's a, a bond hearing. Um, there's only the, the, the case request from the respondent in on the bond side. Um, the court's gonna look at the, at the, um, at the removal case, the removal side to see if there's anything filed there. Looks like there's a 213 and NTA, let's look at the 213. Okay. Um, to the respondent, to the interpreter, sir, the court's going to place you under oath. Mr. Cruz Romero, please raise your right hand.
>
> -No Response-
>
> The Court: Is this Mr. Cruz Romero? (*translation*)
>
> Petitioner: Yes, sir.
>
> The Court: Mr. Cruz Romeo, do you swear or affirm that the, that both the testimony and evidence you'll provide in the case during [the] hearing will be the truth, the whole truth, and nothing but the truth, sir? (*translation*)
>
> Petitioner: Yes, sir.
>
> The Court: Thank you, sir. Please raise your hand. Okay, sir, the court is looking at, um, what is called a form I 213, which is kind of a, summary of your immigration history and your criminal history. Um, and uh, sir, it looks like you have some charges that were dismissed on August 5th. (*translation*)
>
> Petitioner: Yes Sir, Yes Sir.

The Court: And Sir, uh, and sir, do you know why those were dismissed? (*translation*)

Petitioner: Uh, that is because I, uh, to tell you the truth, uh, what happened is that I didn't do anything. It was confusion, most of it.

The Court: Okay. They had, they had the wrong guy. (*translation*)

Petitioner: Um, actually, I do not know very much about the charges that I had, and that's why they, uh, set me free. Uh, but then they brought me here.

The Court: Okay. Uh, counsel Pendelton, do you have any, uh, any further insights on that?

DHS Counsel: As it relates to the dismissal? No, judge, I don't have any other information.

The Court: I didn't think you might, but I figured I'd ask anyhow. Um, okay. And, and Mr. Cruz Romero, um, have you filed any form of immigration relief with this court, sir? (*translation*)

Petitioner: Uh, excuse me?

The Court: So, um, so the, the, the, the, um, the government alleges that you are in the United States illegally, and, and if it, if it proves that allegation to the court, the court could order you removed. So, um, sir, are you going to, um, file a request for relief if the government finds that, uh, if the government argues that you are removable and the court agrees? (*translation*)

Petitioner: Yes.

The Court: Okay, sir, have you, you haven't filed it yet, correct? (*translation*)

Petitioner: Um, an app, an application? Um, I have a habeas corpus. I'm, I'm not sure what we're talking about.

The Court: No, sir. Uh, No.

The Court: Sir. Do you, um, sir, do you fear returning to your home country? Yes or no? (*translation*)

Petitioner: Yes, mam, Yes, mam.

The Court: I'm not a mam sir. Uh, do you, uh, anticipate filling a request for asylum with the United States government? (*translation*)

Petitioner: Yes, but I haven't submitted it yet.

The Court: Okay. Sir for how long have you been, how long have you been in the United States? (*translation*)

Petitioner: Uh, yes. I entered the 11 months on the day 27th of 2022.

The Court: So you, you came into the United States on November 27, 2022.

Petitioner: Yes, sir.

The Court: Okay, and you're going to file asylum? (*translation*)

Petitioner: Yes.

The Court: Okay. And sir, do you have any immediate relatives in the United States who are United States citizens or, um, lawful permanent residents? (*translation*)

Petitioner: Yes, I have three. I have my brother and my two nieces that are American citizens.

The Court: And sir, who is sponsoring your, your, your Bond? Who's your bond sponsor? (*translation*)

Petitioner: Uh, uh, I'm sorry, your Honor. I wasn't able to hear very well.

The Court: Who is sponsoring your bond application, sir? (*translation*)

Petitioner: Uh, uh, this time my wife.

The Court: Okay. She's now a US citizen? (*translation*)

Petitioner: She's a legal resident.

The Court: Okay. Um, okay. And sir, um, how long did you live at your last address before you were detained? (*translation*)

Petitioner: Um, well, approximately, uh, right there. I am still living there. I've been there for two years and two months.

The Court: Okay. And what do you do? What do you do for a living, sir? (*translation*)

Petitioner: Yes, I am working in construction. Uh, yes, uh, general construction.

The Court: Okay. Thank you, sir. Okay. Um, department, what have you heard on flight?

DHS Counsel: Uh, yes, judge, I don't think.

The Court: Or danger, um, or, actually either, I should say either one.

DHS Counsel: Um, I'll start with flight Your Honor, I don't think there's enough evidence submitted by the respondent to, uh, tie him to the community. Um, just, I don't think there's anything at all. Um, I think you would've really benefited from an attorney in this case. Um, the department also, um, doesn't want to understate the, um, the criminal charge, although the department recognized it was dismissed. Um, the criminal con[du]ct does give, um, the department some reservation, um, as to dangerousness. So for those reasons, the, uh, department requests that he remain in his current status.

The Court: Uh, and the court agrees with department's assessment on the, uh dangerousness here. Sir, the court is going to deny your, uh, bond application on the account that it considers that releasing you would pose a risk to the community, and that you are also a flight risk. And, uh, the basis for the flight risk determination is that you have been in the United States for four years and have not filed, uh, any form of immigration relief. You also, you also work in, um, in a field which is, uh, a highly portable skillsets in construction. Okay, sir, you have the right to, uh, appeal this court's decision. Do you wish, and if you, if you wish to appeal, you would have to file a written appeal to the Board of Immigration Appeals on or for 30 calendar days, um, and that's what must be received by the Board of Immigration Appeals. Do you wish to, um, reserve your right to appeal the court's decision? (*translation*)

Petitioner: Yes.

The Court: Actually, before we do that, you know, I, I think attorney, uh, uh, uh counsel Pendleton, you, you, the court's been thinking about what you just said that, that he would benefit from that attorney. Let me also, uh, offer him the chance to withdraw this and, and request two weeks to get any attorney, sir, in the alternative, the court will, uh, allow you to withdraw your current request for bond and give you two weeks to get an attorney and then refile a bond re, uh, request if you would like. Would you like to take that option as well, or uh, or in lieu of the current option? Current outcome? (*translation*)

Petitioner: Uh, I have been working in order to get an attorney. I have, uh, uh, I have tried to find one, but it has been impossible. The ones that, uh, say that will represent pro bono, they just don't answer the calls. They don't, uh, they don't answer the telephone. So it has been very difficult to find one. So that's why I have been representing myself. But if you give me two weeks additional to be able to find one, yes, I will be very thankful to you, uh, uh, ahead of, very thankful to you.

The Court: Sir. Do you wish to withdraw your current bond application and see and have two weeks to seek an attorney? Yes or no? (*translation*)

Petitioner: No.

The Court: Okay, sir, then the court will not, uh, withdraw the current application and it will keep, um, the current bond determination as it is, sir, do you wish you reserve your right to appeal the current, uh, the court, the court's bond determination? (*translation*)

Petitioner: Uh, Yes, uh, Your Honor, um, from the interpreter, he mentioned a name, uh, that I was not able to, um, to get, but what he, he said it's, uh yes, I will try to, uh, ask for another hearing, uh, through this person.

The Court: Okay? I'm gonna repeat the question. I'm not sure you understand. And, and counsel, and counsel, Pendelton, I'm, I'm, I'm aware of your time limits here, so, um, I'm cognizant of that sir, the court will ask the question one last time. Would you like to withdraw your current bond application and have two weeks to find an attorney, or would you like to continue with the current application? (*translation*)

Petitioner: Yes, your Honor. If you give me an extra two weeks to be able to find, uh, representation, I will put that and then I will submit another request for bond because I do want to get out.

> The Court: Okay. The court will allow you to withdraw your current application. Okay, and, and to the Spanish interpreter, do you wish to, uh, appeal the court's decision to allow you to withdraw or waive your right to appeal? (*translation*)
>
> Petitioner: Uh, uh, no, I don't not want to, uh, I don't, I do not want to waive. I would like to keep.
>
> The Court: Okay. I'll put you down for reserving appeal. So if you're gonna appeal the decision, you have 30 days to submit your appeal to the Board of Immigration Appeals—must receive your—must receive your, uh appeal on or before 30 calendar days, that is to say on or before Friday October 30, 2026. (*translation*)
>
> The Court: Uh, DHS waiting or reserving?
>
> DHS Counsel: Wait, Judge.
>
> The Court: Okay. All right. Let's get put down here that the court allowed respondent to withdraw. Respondent reserved, DHS waived. I believe that's everything. Uh, we'll go off the record. Thank you very much, sir. We're going off the record. (*translation*)

(Doc. 13-3 at 2-10).

Later that day—on September 30, 2026, the IJ issued a written order stating that Petitioner's custody redetermination was "WITHDRAWN WITHOUT PREJUDICE." (Doc. 14-2). Petitioner's removal proceedings recently commenced and, accordingly, he does not have a final order of removal.

## II. STANDARD OF REVIEW

Absent suspension, the Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention

is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). It is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

Upon granting a petition for habeas relief, the Court retains continuing jurisdiction to ensure compliance with its prior order and correct non-compliance by a respondent. *See Shonhai v. Lowe*, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (collecting cases); *see also Wilkins v. Doll*, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018) ("There is no question that this court has the power to enforce its writs of habeas corpus." (citing *Sylvain v. Attorney General*, 714 F.3d 150, 155 (3d Cir. 2013))). Thus, a habeas court "has absolute jurisdiction to ensure [a petitioner's] release and to otherwise enforce full compliance with the Writ" upon the Government's failure to correct a legal infirmity justifying habeas relief. *Haskell v. Folino*, 461 F. Supp. 3d 202, 211 (W.D. Pa. 2020).

Because Petitioner filed his habeas petition and motion to enforce *pro se*, the Court will carefully consider his arguments and "liberally construe[]" the petition. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining the Court's "[special] obligation to liberally construe a *pro se* litigant's pleadings is well-established"). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013).

## III. ANALYSIS

Respondent has detained Petitioner for more than four months without any individualized custody determination.[2] Petitioner was first wrongfully mandatorily detained without bond under § 1225(b)(2)(A) until this Court granted his habeas petition and ordered an individualized bond hearing before an IJ. (Doc. 8). Respondent is now detaining Petitioner pursuant to § 1226(a). The question before the Court in this motion to enforce is whether Petitioner's custody redetermination before an IJ was constitutionally adequate.[3]

---

[2] Petitioner is not required to exhaust his administrative remedies because do would be futile under the circumstances. *See Basboga v. Jamison*, 2026 WL 3033623, at *3 (E.D. Pa. Oct. 9, 2026) (requiring exhaustion of due process claim would be futile because neither an IJ nor the BIA "have authority to adjudicate" constitutional claims). Moreover, Respondent fails to recognize that *this Court ordered the bond hearing* to take place within ten days of September 23, 2026, *as a habeas remedy* for Petitioner's unlawful mandatory detention without bond.

[3] After a habeas petitioner receives a custody redetermination and the IJ denies bond, this Court's role is limited by statute. *See* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). Section 1226(e) "precludes an alien from 'challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release.'" *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). This Court may not "re-weigh the evidence or determine credibility" as "that is committed to the discretion of the IJ." *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *3 (3d Cir. Feb. 25, 2022) (nonprecedential)). Although federal courts lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, "they may review

### A. <u>Petitioner's Bond Hearing Was Fundamentally Unfair</u>.

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law." *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017). The Fifth Amendment's Due Process Clause requires adequate procedural protections before deprivations of protected liberty interests and guarantees noncitizens within the United States "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests." *Id.*; *see also Ghanem*, 2022 WL 574624, at *2 (same). Determining whether a bond here was fundamentally fair is necessarily a fact-intensive inquiry.

Due process "require[s] that the decision be grounded in the evidence presented at the hearing and accompanied by a statement indicating the reasons for the decision and the evidence relied upon." *Zheng*, 826 F. Supp. 3d at 555 (citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)). Due process also requires a neutral decisionmaker who "must actually consider the evidence and argument a party presents and denies due process when it acts as a mere rubber-stamp." *Id.* (citation modified).

---

whether the bond hearing was fundamentally unfair." *Fabricio-Valdez v. Lowe*, 2026 WL 2966191, at *2 (M.D. Pa. Oct. 2, 2026) (citation modified). Accordingly, the Court flatly rejects Respondent's argument that § 1226(e) strips it of jurisdiction to consider whether the bond hearing that it ordered as a habeas remedy was constitutionally adequate or fundamentally unfair.

"For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ 'must be individualized and support a finding that continued detention is necessary to prevent [the detainee] from fleeing or harming the community." *Fabricio-Valdez*, 2026 WL 2966191, at *3. A bond hearing is "individualized" if (1) "it is not so arbitrary that it would offend fundamental tenets of due process," (2) "if there is a discernible rational basis for the underlying administrative decision," and (3) "if the immigration judge applies the correct legal standards."[4] *Zheng*, 826 F. Supp. 3d at 555); *see also Fabricio-Valdez*, 2026 WL 2966191, at *3 (same).

"Mechanistic reliance on factors that are common to all § 1226(a) detainees will not suffice." *Id.* Moreover, the BIA "has enumerated proper and relevant considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight." *Id.* The so-called *Guerra* factors include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal history, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at *3 n.39.

---

4 "And because civil immigration detention is preventive rather than punitive, a finding of some abstract risk does not by itself justify continued confinement; the inquiry must also ask whether that risk can reasonably be managed short of detention." *Tasigchana v. Soto*, 2026 WL 2937677, at *2 (D.N.J. Sept 30, 2026) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213-14 (3d Cir. 2020)).

Due process demands "a full and fair hearing that allows [petitioner's] a reasonable opportunity to present evidence on their behalf."[5] *Mujica-Marquez v. Hoover*, 2026 WL 1483740, at *1 (M.D. Pa. May 27, 2026) (Brann, C.J.). Due process also requires an "individualized determination" specific to the petitioner. *Serrano-Alberto*, 859 F.3d at 213.

The IJ made a on the record oral decision denying bond and stated his rationale as follows:

> The Court: Uh, and the court agrees with department's assessment on the, uh dangerousness here. Sir, the court is going to deny your, uh, bond application on the account that it considers that releasing you would pose a risk to the community, and that you are also a flight risk. And, uh, the basis for the flight risk determination is that you have been in the United States for four years and have not filed, uh, any form of immigration relief. You also, you also work in, um, in a field which is, uh, a highly portable skillsets in construction. Okay, sir, you have the right to, uh, appeal this court's decision. Do you wish, and if you, if you wish to appeal, you would have to file a written appeal to the Board of Immigration Appeals on or for 30 calendar days, um, and that's what must be received by the Board of Immigration Appeals. Do you wish to, um, reserve your right to appeal the court's decision?

Although the IJ later permitted Petitioner to withdraw his request for a custody redetermination (Doc. 14-2), his rationale for denying bond is relevant for at least two reasons. First, the IJ failed to recognize that *this Court* ordered the bond hearing to take

---

5 "An IJ has a duty to adequately develop the record and engage in on the record factfinding." *Sall v. Sage*, 2026 WL 3259319, at *10 (M.D. Pa. Oct. 29, 2026) (citation omitted). "The IJ's duty to adequately develop the record to allow for meaningful judicial review 'exists under the due process clause,' not § 1226 or any of its implementing regulations." *Id.* (quoting *Francisco v. Dept. of Homeland Sec.*, 2026 WL 2569007, at *5 n.35 (M.D. Pa. Aug. 31, 2026) (collecting cases) (Brann, C.J.)); *see also Ghanem*, 2022 WL 574624, at *2 (a fundamentally fair bond hearing requires "factfinding based on a record"). An IJ also "has an affirmative duty to ensure that his determination is based upon a record not so devoid of evidence as to render a default judgment against the petitioner." *Francisco*, 2026 WL 2569007 at *5. Although an IJ "need not discuss ad nauseam every piece of evidence nor spell out every last detail of her reasoning where the logical underpinnings are clear from the record," an IJ "generally must sufficiently explain their reasoning to permit appellate or judicial review." *Pomaquiza Samba v. Brackett*, 2026 WL 3131249, at *4 (D.N.H. Oct. 20, 2026).

place within ten days *as a habeas remedy* for his unconstitutional detention without bond under § 1225(b)(2)(A). Second, the transcript of the custody redetermination has once again presented the Court with what is now becoming and all too familiar scenario: the IJ acted as a mere rubber stamp and denied bond based on issues and arguments not presented by the DHS counsel but instead raised *sua sponte* by the IJ himself. *See Sall*, 2026 WL 3259319, at *10-16. As a result, Petitioner was not provided with the type of individualized custody determination before a fair and impartial decisionmaker that the Fifth Amendment's Due Process Clause requires.

The IJ found that Petitioner failed to demonstrate that he would not pose a danger to the community if released. A review of the bond hearing transcript makes clear the only evidence supporting that finding was Petitioner's unknown dismissed criminal charges.[6] Although an IJ "may properly consider charges even after criminal charges are dismissed," the "IJ is still obligated to provide an individualized consideration supported by legitimate evidence." *Fabricio-Valdez*, 2026 WL 2966191, at *4; *see also Tursunov v. Butler*, 2026 WL 2655077, at *4 (M.D. Pa. Sep. 9, 2026) (relying only on dismissed criminal charges to find danger rendered bond hearing "deficient because the IJ did not sufficiently engage with

---

[6] The Court noted in its Order granting habeas relief that "Petitioner was recently arrested for three counts of making terroristic threats, trespassing, evading arrest, two counts of harassment, public drunkenness, and consumption of alcohol on streets/sidewalks." (Doc. 8 at 2 n.1). It further found that it "appears that those charges remain pending and Petitioner did not file a timely traverse contesting Respondent's description of his criminal history." (*Id.*). DHS counsel and the IJ all agreed with Petitioner that his criminal charges had been dismissed. (Doc. 14-3 at 7).

Petitioner's circumstances to render an individualized determination of danger as to him") (Brann, C.J.).

In *Fabricio-Valdez*, Judge Brann held that a bond hearing "was constitutionally deficient because the IJ did not sufficiently engage with Fabrico-Valdez's circumstances to render an individualized determination of danger." 2026 WL 2966191, at *4. There, like here, the "only relevant issue presented" at the hearing was the petitioner's prior criminal charges "absent any context or explanations such as charging documents or affidavits, that had since been dismissed." *Id.* Judge Brann found that the IJ's "complete reliance" on the petitioner's "dismissed charges was procedurally insufficient" and that "[c]ontinued detention resting solely on an arrest never tested following the full procedural protections our criminal justice system offers lacks the neutral fact-finding that due process requires." *Id.* (internal citation and quotations omitted).

Here, the IJ relied only on Petitioner's dismissed criminal charges in finding dangerousness. Counsel for DHS presented no information regarding the dismissed charges, such as the charging documents or an affidavit. *See Fabricio-Valdez*, 2026 WL 2966191, at *4 ("To hold that this determination was procedurally proper would be to endorse a *per se* rule that any prior charges, even when dismissed and where no additional evidence on their foundation is presented by the Government, may alone bar a noncitizen from bond."). Under these circumstances, the IJ's determination that Petitioner posed a danger to the community if released based solely on dismissed criminal charges, reveal that

the IJ "failed to make an individualized determination considering sufficient facets of the relevant circumstances." *Fabricio-Valdez*, 2026 WL 2966191, at *4.

If the IJ sufficiently considered Petitioner's individual circumstances, and not have acted as a mere rubber stamp, he "could have weighed the evidence differently and came to a different conclusion regarding Petitioner's dangerousness" or flight risk. *Tursunov*, 2026 WL 2655077, at *5. Accordingly, the IJ's determination did not provide Petitioner with the type of individualized custody determination as to dangerousness that the Fifth Amendment's Due Process Clause requires and Petitioner was prejudiced as a result. *See Serrano-Alberto*, 859 F.3d at 213 (due process requires "(1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests.").

The IJ also found that Petitioner would pose a flight risk if released. The transcript of the bond hearing show that the IJ based his flight risk determination on: (1) Petitioner's presence in the United States "for four years" without filing "any form of immigration relief," and (2) the fact that Petitioner worked in construction which found is a "highly portable skillset." (Doc. 14-3). DHS counsel did not raise either issue at the bond hearing. Instead, the IJ raised these issues *sua sponte*.

First, Petitioner's presence in the United States for four years without filling any form of immigration is not one of the *Guerra* factors. Importantly, the IJ here failed to connect the

Petitioner's presence in the United States for four years without filing any immigration relief to an individualized determination of Petitioner's flight risk. Although the *Guerra* factors are not the only consideration an IJ may use when determining risk of flight, Petitioner is still entitled to an individualized flight risk determination based on the evidence presented at the hearing. Thus, while an IJ "has significant discretion in determining the weight to afford facts relevant to a bond decision, the IJ must exercise that discretion in individualized fashion based on the noncitizen's specific circumstances, not merely the procedural posture of their removal proceedings." *A.S.G. v. Oddo*, __ F. Supp. 3d __, 2026 WL 3117712, at *3 (W.D. Pa. Oct. 13, 2026) ("Concluding that Petitioner is unlikely to be successful in his appeal does not necessarily connect to the determination that Petitioner is not likely to appear to future immigration proceeding" as "[t]he same logic would apply [to] nearly every bond applicant under 8 U.S.C. § 1226(a) with a pending appeal") (Hornak, J.).

Second, the fact that Petitioner worked in the construction industry, which the IJ purported to tie to his flight risk determination, does not support a flight risk determination. Although lack of ties to the community and employment history are a valid considerations to the flight risk determination *see Francisco*, 2026 WL 2569007, at *6, here the IJ never addressed that Petitioner is married to a lawful permanent resident, that his brother and nieces are United States citizens, and that he has lived at the same address with his spouse for over two years. At bottom, "the IJ did not properly analyze Petitioner's community ties." *Francisco*, 2026 WL 2569007, at *5. "Without more on the record from which a

proper analysis of Petitioner's community ties and risk of flight could be conducted, a finding of 'limited ties' therefore, reflects a boilerplate conclusion rather than an individualized analysis based on Petitioner's circumstances." *Id.*

In sum, had the IJ sufficiently considered Petitioner's individual circumstances, instead of acting as "mere rubber stamp," he "could have weighed the evidence differently and came to a different conclusion regarding Petitioner's dangerousness" or flight risk.[7] *Tursunov*, 2026 WL 2655077, at *5. Accordingly, the IJ's determination did not provide Petitioner with the type of individualized custody determination as to flight risk that the Fifth Amendment's Due Process Clause requires. As such, the Court finds that Petitioner's bond hearing was fundamentally unfair and violated his due process rights and will grant his petition.

**B. <u>Immediate Release is the Appropriate Remedy</u>.**

Having concluded that Petitioner's bond hearing was fundamentally unfair, the Court now turns to the appropriate habeas remedy. Here, "Respondents have now violated Petitioner's due process rights twice: first when they initially detained him unlawfully under § 1225(b), and then again when they deprived him of a constitutionally adequate bond hearing." *Zheng*, 826 F. Supp. 3d at 560 (ordering release); *see also Mujica-Marquez*, 2026

---

7 *In Mujica-Marquez*, Judge Brann found the IJ failed to make individualized flight risk determination when he "relied on only three considerations" to find flight risk: "he entered the country unlawfully; he had only been in the United States for approximately four years, which the IJ termed 'pretty recent'; and his grounds for relief from removal are speculative"). 2026 WL 1483740, at *4; *see also Zheng*, 826 F. Supp. 3d at 556 (bond hearing was fundamentally unfair when the IJ "failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk").

WL 1483740, at *5 (ordering release after determining petitioner was subject to two due process violations). Moreover, Respondent failed to comply with this Court's order by submitting a timely brief in opposition to the motion to enforce and the IJ did not comply with the Court's habeas order requiring an individualized bong hearing within ten days of September 23, 2026.

Like other courts cited herein, the Court finds that "simply ordering a second bond hearing" after two due process violations "would not adequately remedy the constitutional injury" Petitioner has suffered. *Zheng*, 826 F. Supp. 3d at 560; *see also Mujica-Marquez*, 2026 WL 1483740, at *5 (ordering release instead of a second bond hearing after respondent twice violated petitioner's due process rights). While ordering a second bond hearing for a § 1226(a) detainee at which the Government must demonstrate flight risk or danger by clear and convincing evidence "may be an appropriate remedy in some cases," this is not one of them. *Zheng*, 826 F. Supp. 3d at 562.

The record before this Court "is entirely devoid of any individualized justification for Petitioner's continued detention." *Id.* Considering the totality of the circumstances, and regardless of which standard of proof would apply, the Court declines to order a second bond hearing before an IJ. Because Petitioner has been deprived of his liberty for four months without adequate procedural protections that the Due Process Clause requires, release is the only just and appropriate habeas remedy, as "[r]equiring Petitioner to endure further detention would only compound the constitutional violation." *Id.*

## IV. CONCLUSION

In sum, Petitioner's habeas petition will be granted because the only custody redetermination throughout his four-month civil immigration detention was fundamentally unfair and violated due process. Respondent will be directed to immediately release Petitioner Francisco Lindolf Cruz Romero from the custody of the Warden of the Pike County Correctional Facility and file an affidavit or declaration pursuant to 28 U.S.C. § 1746 confirming that Petitioner has been released from custody.

The Court will temporarily enjoin Respondent from re-arresting and re-detaining Petitioner for a period of 7 days to ensure the habeas remedy is effective and further direct Respondent that any future attempts "to re-detain Petitioner under § 1226(a) must comport with due process," which in Petitioner's case now requires placing the "burden on the Government to justify continued detention." *Zheng*, 826 F. Supp. 3d at 563. Accordingly, if the Government elects to re-detain Petitioner pursuant to § 1226(a) it shall be held to a "clear and convincing" evidentiary standard and must first demonstrate to a fair and impartial IJ that detention is necessary because Petitioner presents a danger to the community or would pose a flight risk if released. A separate Order follows.

Robert D. Mariani
United States District Judge